UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JEFFREY CREED SIMMONS, as Next of Kin of Jeffrey Jerome Simmons, deceased : : : : Plaintiff, : : : Docket No. v. : : HAMILTON COUNTY, TN, and EMPLOYEES : RAMSEY, MOORE, KIBBLE, KNIGHT : JACKSON, WILLIAMS, WOFFORD : and PLANER, and NURSE AUDREY : ADAMS and OTHER PERSONNEL AS : YET UNIDENTIFIED : : Defendants. : | |

## COMPLAINT

**COMES** now Jefferey Creed Simmons, Plaintiff in the above-styled cause and files this claim against the above-named Defendants, HAMILTON COUNTY, TN., and Employees Ramsey, Moore, Kibble, Knight, Jackson, Williams, Wofford and Planer and Nurse Audrey Adams, and other personnel as yet unidentified.

### Nature of the Action and Jurisdiction

1. This is a civil action filed pursuant to 29 U.S.C. section 1983 seeking damages against the defendants for committing acts depriving the plaintiff of his rights secured by the constitution and laws of the United States.

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. 1331.

## Parties

3. Jeffery Creed Simmons is the son of the deceased victim, Jefferey Simmons, who was at the time of his death, a resident of Hamilton County, TN.

4. Defendant Hamilton County is a political subdivision of the State of Tennessee and is subject to the jurisdiction of this court.

5. Sherriff's deputies, Ramsey, Moore, Kibble, Knight, Jackson, Williams, Wofford and Planer are employees of Hamilton County and are subject to the jurisdiction of this court.

6. Nurse Audrey Adams is an employee of Hamilton County and is subject to the jurisdiction of this court.

## Statement of Facts

1. Jeffrey Simmons ('Mr. Simmons"), 45 years old, was arrested on May 11, 2017 on charges of possession of drug paraphernalia and methamphetamine, and brought to the Hamilton Count jail for booking at 3:23 a.m.

2. While in the intake area, he complained of chest pains and told authorities that his family has a history of heart disease. Nurse Audrey Adams checked his vital signs. She reported in the County's investigation that he was sweaty and did not think she needed to do anything further to help him. (*See* Investigative Report, appended hereto as **Exhibit 1**). She took his vital signs, but those results have been deleted from the County's Investigative Report.

3. Officer Kibble stated that during intake, Mr. Simmons complained that he had chest pain and pain in both arms.

4. Cpl. Planer reported that he overheard Officer Kibble raising his voice to Mr. Simmons as he was complaining of chest pain. Kibble told Planer that the nurse had already checked him and cleared him to come into the jail.

5. After Mr. Simmons was taken to his cell, he continued to complain of chest pain. He was observed hyperventilating and continually crying out that he needed help, according to inmate Kenneth Weaver.

6. Weaver observed Mr. Simmons breaking out in a "mad sweat." At that point he removed his dripping shirt, and the other inmates began to wake up because of the disturbance.

7. The other inmates began banging on the cell door and asking for help for Mr. Simmons. Deputy Ramsey then came to the door, took Mr. Simmons out of the cell for a few minutes, then brought him back.

8. After he was returned to the cell, he again started sweating profusely, yelling that his chest was hurting, and begging for an aspirin, according to inmate Jackie Swafford.

9. According to Mr. Weaver, all of the inmates were banging on the door, attempting to seek help for Mr. Simmons, who was then lying on the floor, with his extremities curling in toward his body and begging for help. His skin changed color to a purplish hue.

10. The inmates called out to the deputies, who told the inmates that Mr. Simmons was just coming down off of drugs.

11. Inmate Robert Jackson told the deputies that Mr. Simmons needed help and was told by the officers that he was fine, despite his complaints that he thought he was having a heart attack.

12. No medical personnel were summoned by the deputies to evaluate Mr. Simmons condition.

13. The jail has a clinic and a medical station in the booking area. Therefore, medical assistance was available to inmates at the jail.

14. Around 5:30 a.m., deputies came to the cell to serve breakfast to the inmates, Mr. Simmons was lying on the floor of the cell and could not come out for the meal and needed help. Nevertheless, the deputies elected to finish serving breakfast to the inmates in the other cells before retuning to check on Mr. Simmons, although according to the investigative report, "it was clear he was not feeling well then."

15. According to inmate Jackie Swafford, by this time, Mr. Simmons was curling and stretching his limbs and making an unusual noise. Mr. Simmons had also urinated on himself.

16. According to inmate Jonathan Atwood, he personally told Deputy Moore that Mr. Simmons was having problems and Deputy Moore replied, "He's breathing, he's fine."

17. Deputy Wofford reported that she walked near Mr. Simmons' cell shortly after serving breakfast. The other inmates were motioning and calling to her to come to the cell. She looked in the cell and saw Mr. Simmons feet and part of his legs and asked Deputy Ramsey to come with a key.

18. As they approached Mr. Simmons, he was unconscious, and his breathing was shallow. At that time, Nurse Adams was summoned to the cell.

19. By the time the deputies removed him from the cell he had stopped breathing.

20. Jail personnel stated that they started to perform CPR. Sgt. Jackson then asked someone to retrieve the automatic external defibrillator ("AED").

21. Sgt. Jackson attempted to start the AED, but it would only start for a few seconds and then shut off. He attempted to start the AED three or four more times, but the device failed to function.

22. Sgt. Jackson asked someone to bring another AED. Lt. C. Knight brought another AED about 4 minutes later.

23. Shock with the AED failed to revive Mr. Simmons, and he was transported to Erlanger Hospital where he was pronounced dead at 6:21 a.m.

24. Following an autopsy by the Hamilton County Medical Examiner's Office and an investigation by the Hamilton County Sheriff's Office Criminal Investigation Division, it was concluded that Mr. Simmons died of a methamphetamine overdoes with a contributing factor of atherosclerosis.

### Causes of Action

**Count One**: **Infliction of Cruel and Unusual Punishment by Deliberate Indifference to the Medical Needs of the Plaintiff Resulting in Loss of Life in Violation of Mr. Simmons Rights under the Fourteenth Amendment to the Constitution.**

25. During the Intake Process at the Hamilton County Jail, Mr. Simmons told the intake personnel that he was experiencing pain in his chest and both arms and disclosed that he had a family history of heart disease. He also disclosed that he had taken methamphetamine.

26. Despite this disclosure, Nurse Adams decided that Mr. Simmons could be placed in a cell. She states that she took his vital signs, but this information has been deleted from the Internal Affairs Report.

27. He was taken to a cell to be held for booking. Because he was incarcerated, it was impossible for him to obtain medical treatment unless the jail personnel assisted him, which they failed to do. He was entirely dependent on the jail personnel who owed him a duty, pursuant to the Fourteenth Amendment to the Constitution of the United States of America, to provide him with medical treatment.

28. Shortly thereafter, Mr. Simmons' physical condition declined. He banged on the door of the cell and begged for help and asked for someone to bring him an aspirin.

29. Mr. Simmons' calls for help were ignored by Corrections Officer Moore, in deliberate indifference to Mr. Simmons' cries for help.

30. The other inmates also cried out, banged on the door and asked for help for Mr. Simmons who was lying on the floor in acute distress, sweating profusely, his complexion changing to purple and continuing to beg for help.

31. The corrections officer exhibited deliberate indifference when he told the inmates that Mr. Simmons was just coming down from drugs and that he was still breathing, so he was all right. Officer Moore made this assumption without regard to any assistance from or evaluation by medical personnel.

32. By 5:30 a.m. when the deputies came to serve breakfast, the inmates told them that Mr. Simmons was very ill. Rather than seek medical help for Mr. Simmons, they decided to finish serving breakfast, in deliberate indifference to Mr. Simmons' medical condition, pain and suffering as he lay dying.

35. After breakfast was served, the other inmates summoned Deputy Wofford to look at Mr. Simmons who was then unconscious.

36. Deputy Ramsey and inmate Swafford then pulled Mr. Simmons from the cell and he ceased breathing.

37. Efforts to revive Mr. Simmons were futile, since faulty equipment AED equipment owned by Hamilton County was used to attempt to revive him. Accordingly, he lay unconscious for an additional four minutes, while the jail personnel tried to locate a working AED. He could

not be revived. He was then transported by ambulance to Erlanger Hospital where he was pronounced dead.

38. Because the jail personnel ignored his complaints of chest pain and his family history of heart failure, he suffered severe pain unnecessarily for a period of approximately two hours prior to his death.

39. Even though it is true that Mr. Simmons had taken methamphetamine, the jail personnel were on notice that he had a family history of heart disease, thereby alerting them that if he was overdosing, he needed intensive monitoring of his physical condition. Such monitoring was not provided to Mr. Simmons.

40. Failure to provide Mr. Simmons with prompt medical attention caused his unnecessary and untimely death.

41. The failure to provide Mr. Simmons with prompt medical attention was the proximate cause of his unnecessary suffering and unnecessary and untimely death.

**Count Two: Negligent Hiring, training, management, supervision and retention by the Hamilton County Sheriff's Department.**

41. The Hamilton County Sheriff's Department employs the officers and nurses who work in the intake department, medical facility, and in the holding area of the jail.

42. The officers and nurses in charge of booking Mr. Simmons on May 11, 2017 were employed, trained, managed, supervised and retained by the Hamilton County Sheriff's Department.

43. The callous and deliberate indifference to Mr. Simmon's medical condition resulted in Mr. Simmon's intense suffering for two hours prior to his death. This deliberate indifference was a result of failure to properly train, supervise, hire, manage and retain individuals competent

to either provide medical assistance or to request medical assistance when an inmate becomes seriously ill.

44. Despite being on notice that Mr. Simmons had a family medical history of heart disease, and that he was in fact, suffering from chest pain at the time he arrived at the jail, no effort was made by the personnel responsible for Mr. Simmons to provide heightened monitoring of his condition.

45. Despite being on notice that Mr. Simmons had used methamphetamine prior to his arrest, no effort was made by the personnel responsible for Mr. Simmons, who knew he had a family history of heart disease, to provide heightened monitoring of his condition.

46. Despite the repeated pleas for help from Mr. Simmons and from the other inmates in his cell, Deputy Moore, with no medical training, made the assessment that as long as Mr. Simmons was breathing, he did not require medical assistance.

47. The lack of proper hiring, training retention and supervision of said employees by Hamilton County was the proximate cause of the horrible suffering endured by Mr. Simmons and the proximate cause of his untimely and unnecessary death.

**WHEREFORE**, Mr. Simmons prays that this court will convene a jury of his peers to try the causes joined and will award him all fees and costs and legal expenses and such other further relief as this court shall deem appropriate.

Respectfully submitted,

**THE JAMES FIRM**


/s/ Stuart F. James
STUART F. JAMES, BPR #013841
VICKI L. JAMES, BPR # 014389
735 Broad Street, Suite 403
Chattanooga, TN 37402
Telephone: (423) 756-3646
Facsimile: (423-756-3647
sfj@thejamesfirm.org
vlj@thejamesfirm.org